No. 05-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 83

_____

STATE OF MONTANA,

       Plaintiff and Appellant,

  v.

ALLENDALE MUTUAL INSURANCE COMPANY and
AFFILIATED FM INSURANCE CO.,

       Defendants and Respondents.

_____

APPEAL FROM:    District Court of the First Judicial District,
                  In and for the County of Lewis and Clark, Cause No. BDV-2000-785,
                  The Honorable Jeffrey M. Sherlock, Presiding Judge.


COUNSEL OF RECORD:

       For Appellant:

              Liesel Shoquist and Dale R. Cockrell, Christensen, Moore, Cockrell,
              Cummings & Axelberg, P.C., Kalispell, Montana

       For Respondents:

              Peter F. Habein and David Wagner, Crowley, Haughey, Hanson, Toole &
              Dietrich, Billings, Montana

              Scott M. Stickney, Jerret E. Sale and Deborah L. Carstens, Bullivant
              Houser Bailey, PC, Seattle, Washington

_____

                     Submitted on Briefs:  June 1, 2006
                               Decided:  March 27, 2007

Filed:

_____
                            Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 The State of Montana appeals from an order of the First Judicial District Court, Lewis and Clark County, granting Defendants' motions for summary judgment and dismissing the State's claims. We affirm.

¶2 The State filed suit against Defendants, Allendale Mutual Insurance Company (Allendale) and Affiliated FM Insurance Company (Affiliated), seeking coverage and reimbursement for expenses incurred in preparing for anticipated computer problems associated with the new millennium beginning January 1, 2000 (Y2K).

¶3 Allendale and Affiliated issued insurance policies to the State covering the periods between July 1, 1993, and July 1, 2000. These policies insured against "all risks of physical loss or damage" and "all risks of direct physical loss or damage," respectively. However, the policies excluded coverage for damage caused by "inherent vice" or "faulty design."

¶4 Between 1996 and 2000 the State took steps to address the anticipated Y2K issues with its computers. On March 23, 2000, the State wrote to Allendale and Affiliated, indicating it intended to submit claims for its related expenses. The State claimed to have spent over $6 million to "prevent loss and property damage which could have resulted from 'Y2K' related problems."[1]

¶5 Allendale and Affiliated responded to the State's letter on March 31, 2000,

---

[1] The State alleged these costs to include: loss of staff; loss of use and access to hardware, software and systems; hiring of contractors; buying computer hardware and software; appointing task forces; having staff and contractors inventory, test and assess the State's various hardware and software systems; buying and rewriting software; replacing hardware and software; loss of staff time; and loss of use of access to hardware, software and computer systems.

claiming their policies did not cover "remediation of date or time recognition problems." The State filed this suit against both insurers on January 3, 2001.

¶6    The parties filed cross-motions for summary judgment on the coverage issue. The District Court granted the insurers' motion and denied the State's motion, concluding: (1) the "inherent vice" and "faulty design" exclusions in the insurance policies applied to preclude coverage; (2) the State was not entitled to coverage under the policies' protection and preservation of property provisions; (3) the policies were not ambiguous; and (4) the alleged failure of the insurers to deliver copies of two insurance policies did not entitle the State to coverage.

¶7    This Court reviews a district court's grant of summary judgment *de novo*. *Watson v. Dundas*, 2006 MT 104, ¶ 16, 332 Mont. 164, ¶ 16, 136 P.3d 973, ¶ 16. The moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56. The burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Watson*, ¶ 16. If the court determines that no genuine issues of fact exist, it must then determine whether the moving party is entitled to judgment as a matter of law. *Watson*, ¶ 16. We review legal determinations made by a district court to establish whether the conclusions are correct. *Watson*, ¶ 16.

¶8    The State argues that the Allendale and Affiliated policies are ambiguous and, thus, their language must be interpreted against the insurers to include the State's Y2K readiness expenses. *See Jacobsen v. Farmers Union Mut. Ins. Co.*, 2004 MT 72, ¶ 19, 320 Mont. 375, ¶ 19, 87 P.3d 995, ¶ 19 ("Any ambiguities in the language of a policy will

3

be construed against the insurer."). The State also argues that Allendale and Affiliated failed to provide copies of the insurance policies for 1996-1999 and 1997-1998, respectively, and are therefore barred from relying upon the terms of those policies.

¶9 The Allendale policies generally provided coverage as follows: "This policy covers property . . . against all risks of physical loss or damage except as hereinafter excluded[.]" Similarly, the Affiliated polices provided: "This policy insures against all risks of direct physical loss or damage to the insured property except as excluded under this policy." The State argues that this language is ambiguous. However, it is not necessary to determine whether the language providing coverage is ambiguous because we conclude that Y2K-readiness expenses are excluded from the relevant policies, and the policy exclusions are not ambiguous.

¶10 All policies issued on or after July 1, 1999, from both Allendale and Affiliated expressly exclude coverage for Y2K-readiness expenses.[2] Thus, the expenses incurred by the State in this case are clearly excluded from these policies. At issue are policies that were in effect prior to July 1, 1999.

¶11 All policies issued prior to July 1, 1999, from both Allendale and Affiliated expressly exclude from coverage any loss of property resulting from an "inherent vice" or

---

[2] The policies state:

> The policy does not pay for remediation, change, correction, repair or assessment of any Y2K or similar date or time recognition problem in any electronic data processing equipment or media, whether preventative or remedial, and whether before or after a loss[, including temporary protection and preservation of property]. The policy does not pay for any time element loss resulting from the foregoing remediation, change, correction, repair or assessment.

(The bracketed language is not included in the Affiliated policy).

"faulty design." Although, these terms are not defined in the policies, other courts have interpreted the same language and its applicability to Y2K prevention costs. *See e.g., GTE Corp. v. Allendale Mutual Ins. Co.*, 372 F.3d 598 (3rd. Cir. 2004); *Port of Seattle v. Lexington Ins. Co.*, 48 P.3d 334 (Wash. App. 2002).

¶12    An "inherent vice" has been defined as "any existing defects, diseases, decay or the inherent nature of the commodity which will cause it to deteriorate with a lapse of time." *Port of Seattle*, 48 P.3d at 338 (quoting *Mo. Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 136, 84 S. Ct. 1142, 1143 (1964)). Inherent vice is also defined as a "loss not covered by the policy . . . not relat[ing] to an extraneous cause but to a loss entirely from internal decomposition or some quality which brings about its own injury or destruction. The vice must be inherent in the property for which recovery is sought." *Port of Seattle*, 48 P.3d at 339 (citation omitted). Essentially, the analysis focuses on whether the insured's problem or loss was caused by an internal or external factor or defect. *See Port of Seattle*, 48 P.3d at 339. If caused by an *internal* defect, the problem should be excluded from coverage as an inherent vice.

¶13    In *Port of Seattle*, the insured argued that the problem was external because absent an external event, the Y2K transition, there would have been no loss. However, the court concluded that the insured's Y2K problem was an excluded inherent vice because the date field is an internal quality that brought about its own problem: "but for the two-digit date field code programmed into the [insured's] software, the arrival of January 1, 2000, would not result in loss." *Port of Seattle*, 48 P.3d at 339.

¶14    Similarly, in *GTE*, the insured party filed an action against its insurers, seeking

5

coverage under "all risk" property insurance policies for costs and expenses it incurred in the remediation of its computer systems to avoid Y2K-related problems. *GTE*, 372 F.3d 598. The court concluded that design defect and inherent vice exclusions barred the insured from recovering its costs. *GTE*, 372 F.3d at 609-611. GTE, the insured party, argued that the two-digit designation system could not be excluded as a defective design because, at the time of its implementation, such a design conformed to industry standards, government regulations, and was required for GTE's systems to interface with other systems. The court found this argument unpersuasive, stating:

> The fact that GTE may have utilized the best available system, and subsequently faced the need to remedy a problem with that system, does not save GTE from the defective design exclusion. Taken to its logical conclusion, GTE's argument would render virtually every business upgrade an insurable risk. For example, GTE could argue that upgrades to its software or computers undertaken in the name of mitigating an insurable risk would be insurable as long as it used the best system at the time of initial installation.

*GTE*, 372 F.3d at 610. Further, the *GTE* court adopted the analysis set forth in *Port of Seattle* to exclude recovery under the inherent vice exclusion. *GTE*, 372 F.3d at 611.

¶15 We agree with the reasoning in *GTE* and *Port of Seattle*. The District Court was correct that coverage for the State's remediation measures is excluded by the plain language of both the faulty design and inherent vice exclusions.

¶16 The State also argues that by changing their post-July 1, 1999, policies to expressly exclude all damages related to Y2K, Allendale and Affiliated impliedly admitted that the terms of their earlier policies are ambiguous, and thus the insurers cannot rely on the exclusions in the earlier policies. Considering the policies in question,

6

we are not persuaded by this argument. We conclude that the faulty design and inherent vice exclusions in the policies in question are not ambiguous and clearly exclude the claimed losses.

¶17 The State next argues that its loss falls under the "Protection and Prevention of Property" clause in Allendale's policy.[3] This clause provides:

> In case of actual or imminent physical loss or damage of the type insured against by this Policy, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protections and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy[.]

¶18 This clause only applies to "physical loss or damage *of the type insured against by [the] Policy*[.]" (Emphasis added). Thus, measures taken to prevent a risk that has been excluded from the policy are not covered under this clause. As the Y2K damages are excluded from the Allendale policies, the protection and prevention clause does not cover the State's claimed losses.

¶19 Although Affiliated did not include a protection and prevention clause in its relevant policies, the State argues that it impliedly included such coverage because its policies did require that the insured, "use all reasonable means to save and preserve [its] property." Even if we were to construe Affiliated's policies to provide the type of coverage the State requests, the claimed loss would still be excluded for the same reason Allendale's Protection and Prevention clause was ineffective, that is, the policies did not cover the prevention of uninsured risk. *GTE*, 372 F.3d at 618 ("If the insured acts to prevent a loss that is not covered by the policy, there is no duty or benefit to insurer;

_____

[3] Affiliated did not include this type of clause in its policies prior to July 1, 1999.

7

'[t]he obligation only exists when the action taken is to prevent a loss for which the underwriter would be liable.'" (quoting *GTE Corp. v. Allendale Mut. Ins. Co.*, 258 F.Supp.2d 364, 373 (D.N.J. 2003) (quoting *Port of Seattle*, 48 P.3d at 340)).

¶20　Finally, the State claims that Allendale and Affiliated failed to provide copies of their insurance policies for 1996-1999 and 1997-1998, respectively, and goes on to argue that if an insurer does not timely deliver a policy to the insured, it may not rely on exclusions within the undisclosed policy.

¶21　The exclusions in the policies in question were communicated to the State. The policies the State claims were not delivered were renewals of existing policies and contained identical coverage provisions and exclusions. It is undisputed that the State received a renewal binder from each insurer that listed all applicable coverage forms, or otherwise expressly stated the exclusions.[4] The State cannot reasonably claim that it was unaware of the relevant terms and exclusions. Even if a policy is not delivered to an insured, insurers may rely upon valid exclusions in their policies when the insured has notice of those exclusions. *Williams v. Fallaize Ins. Agency, Inc.*, 469 S.E.2d 752, 755-756 (Ga. App. 1996).

¶22　Affirmed.

　　　　　　　　　　　　　　　　　　　　　　/S/ JOHN WARNER

---

[4] The State received a twenty-page Renewal Insurance Binder regarding the Allendale policy on July 3, 1996. In addition, Affiliated faxed a copy of its eleven-page Insurance Change Binder to the State's insurance broker on June 27, 1997. Both binders specifically listed all included policy forms and endorsements. Further, the relevant policy forms were identical to those in the previous policies that the State admittedly received.

We Concur:


/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON