DA 06-0839

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 3

VIRGINIA CITY, a Municipal Corporation and
Political Subdivision of the State of Montana,

   Plaintiff and Appellee,

 v.

THE ESTATE OF GREG OLSEN and
PHILIP MASON, JR.,

   Defendants and Appellants.

APPEAL FROM: District Court of the Fifth Judicial District,
      In and For the County of Madison, Cause No. DV 29-99-48
      Honorable Ted L. Mizner, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Andrea J. Olsen, Attorney at Law, Missoula, Montana

   For Appellee:

     William A. Hritsco, Davis, Warren & Hritsco, Dillon, Montana

        Submitted on Briefs: October 24, 2007

             Decided: January 6, 2009

Filed:

     _____
           Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The City of Virginia City, Montana, brought this action against Greg Olsen and Phillip Mason Jr. (collectively, Defendants), seeking to enjoin their construction of a house due to permit violations. Defendants answered the City's complaint and raised several counterclaims. Ultimately, the Fifth Judicial District Court, Madison County, entered an order granting summary judgment to the City on both its complaint and Defendants' counterclaims and ordering that the house be removed from the property. Defendants appeal, and we now affirm.

## ISSUES

¶2     We address the following issues on appeal:

1. Did the District Court err in granting summary judgment to the City on its complaint seeking to enjoin construction of the house based on violations of the development and site zoning permits?

2. Did the District Court err in granting the City permanent injunctive relief in the form of ordering Olsen and Mason to remove the house from the property?

3. Did the District Court err in granting summary judgment to the City on Defendants' counterclaims?

## BACKGROUND

¶3     In the spring of 1999, Olsen requested Mason to assist him in building a house on Olsen's property, consisting of Lots 11 and 12 of Block 201 in Virginia City. The City has a Design Review Zoning Ordinance (Ordinance 503) by which it controls and manages new construction and changes to existing buildings to ensure such construction

2

is consistent with the City's historic character. Ordinance 503 incorporates by reference the City's Design Review Guidelines (Guidelines), as well as Titles 11 and 15 of the Virginia City Code. The Guidelines are intended to "aid in the design of buildings within the town of Virginia City, as well as act as the criteria for reviewing applications under the Design Review Ordinance." The Guidelines set forth criteria relating to the architectural style and design, as well as location, of buildings in various districts of the City so that new construction and changes to existing buildings are designed in a manner to protect and enhance the unique historic character of the City. Title 11 of the City Code establishes additional restrictions relating to size and placement of buildings in the various City districts.

¶4     Ordinance 503 requires both a development permit and a site zoning permit for all new construction within the City and sets forth procedures to follow in applying for the necessary permits. In accordance with those procedures, Mason (acting as Olsen's agent) approached the City's Historic Preservation Officer, Chandler Simpkins, who assisted Mason with preparing applications for the two permits.

¶5     Upon Simpkins' request, Mason provided two drawings illustrating front and rear exterior views of the proposed house. Simpkins also requested a "plot plan" drawing of the property, which is a required part of an application for a site zoning permit under Ordinance 503. Ordinance 503 states that the drawing must show the proposed location of the building on the property and "shall clearly show property lines, adjacent public lands, relationship of roads & utilities, applicable setbacks, footprint, overhangs, etc." Mason provided a drawing which showed the property lines for Lots 11 and 12 and

indicated that the lots were bordered on the south by Warren Street and the east by Fairweather Street. The drawing also showed that the house's footprint—or exterior dimensions—was to be 40 feet wide by 30 feet deep and that the house was to be set back 25 feet from the south lot line along Warren Street and 35 feet from the east lot line along Fairweather Street.

¶6 The permit applications, including the three drawings, were then presented to the City's Historic Preservation Advisory Committee for consideration. The Committee requested design changes for the rear exterior view of the proposed house, approved the applications with those changes, and forwarded the applications to the Town Council for final consideration. The Council approved the permit applications and issued the permits on June 17, 1999. As approved, the house was to be constructed with three levels. The rear view to the north would expose all three levels, including a daylight basement, first floor, and second floor. To the south, facing Warren Street, the view of the house is only of the first and second floors, with the first floor extending approximately six feet further to the front than the second and covered with a shed roof. Mason began construction of Olsen's house immediately upon issuance of the permits.

¶7 In late July 1999, Mason began receiving complaints from City residents that the house, as it was being constructed, violated setback requirements. On August 3 and 4, 1999, the City's new Historic Preservation Officer, Carl Donahue, conducted an investigation and advised Mason of the alleged setback violations. Also on August 4, Olsen's neighbors submitted a written complaint to the City's Board of Adjustments regarding the setback violations. On August 11, Donahue sent Olsen and Mason a

4

written letter requesting that they cease construction on the house immediately. Two days later, the Town Council sent a written letter requesting that construction cease and that Olson and Mason meet with the Council to attempt to resolve the matter. Mason continued construction on the house.

¶8 In late August, David Bowman was commissioned to conduct a survey of Olsen's property and the construction site to measure the setbacks and height of the house. Based on Bowman's survey, the City sent notice to Olsen and Mason that it was revoking the building permits based on permit violations and seeking an injunction preventing further construction. The City then filed a complaint and application for preliminary injunction in the District Court.

¶9 The City's complaint alleged that Olsen's house, as constructed by his agent Mason, violated the requirements of the building permits and the City ordinances regarding setback distances, height, window size and placement, and general structure. The complaint requested a permanent injunction against Defendants, that the District Court hold a show-cause hearing, and that the court issue a preliminary injunction restraining Defendants from further construction in violation of the permits and ordinances. The District Court held a show-cause hearing on the City's application for preliminary injunction and, on September 15, 1999, entered an order granting the preliminary injunction, which precluded further construction on the house pending further proceedings on the City's complaint.

¶10 Defendants filed an answer to the City's complaint in which they raised several affirmative defenses and counterclaims. In their counterclaims, Defendants alleged that

5

Ordinance 503 was unconstitutionally vague and could not be enforced against them and that the City and its officials arbitrarily and discriminatorily enforced Ordinance 503 in a manner that violated Defendants' constitutional rights to due process and equal protection.

¶11 The parties conducted discovery and eventually filed cross-motions for summary judgment. The City argued the evidence established that Olsen's house, as constructed, violated the development and site zoning permits with regard to setback requirements, height, design, and overall size, thus entitling the City to summary judgment on its complaint. The City further argued that there was no evidence supporting Defendants' counterclaims regarding the City's alleged selective and arbitrary enforcement of Ordinance 503 and that the City was entitled to summary judgment on that issue as well. Defendants, in turn, argued that they were entitled to summary judgment in their favor because the house met the setback requirements of the City's ordinances or because the ordinances were so vague as to be unenforceable. Defendants requested that the District Court hold an evidentiary hearing on the summary judgment motions.

¶12 The District Court denied Defendants' motion for a hearing and entered an order regarding the summary judgment motions based on the depositions and evidence submitted by the parties, as well as the testimony from the prior show-cause hearing. The court granted summary judgment to the City on all issues, granted a permanent injunction restraining further construction on the house, and dismissed Defendants' counterclaims. Defendants appealed, asserting that the District Court had erred in denying their request for a hearing on the motions and in granting summary judgment to the City. On appeal,

6

this Court held that the District Court had erred in denying Defendants' request for an evidentiary hearing. We accordingly reversed the court's summary judgment order and remanded the case for further proceedings. *See Virginia City v. Olsen*, 2002 MT 176, ¶¶ 23-25, 310 Mont. 527, ¶¶ 23-25, 52 P.3d 383, ¶¶ 23-25.

¶13 On remand, the District Court scheduled a hearing on the summary judgment motions. Both parties appeared at the hearing and orally argued their respective positions. Neither party presented any additional evidence or testimony in support of their respective motions. The court subsequently entered an order granting summary judgment to the City on its complaint and on Defendants' counterclaims, permanently enjoining Defendants from further construction on the house, and ordering Defendants to remove the structure from the property and re-contour Lots 11 and 12 to their preconstruction appearance and grade. Defendants now appeal.

## STANDARD OF REVIEW

¶14 We review a district court's grant of summary judgment de novo, using the same criteria of M. R. Civ. P. 56 as applied by the district court. *Smith v. Burlington Northern and Santa Fe Ry. Co.*, 2008 MT 225, ¶ 10, 344 Mont. 278, ¶ 10, 187 P.3d 639, ¶ 10. In that regard, Rule 56(c) provides that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Thus, the party moving for summary judgment carries the initial burden to establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Smith*,

7

¶ 10. If this burden is met, the nonmoving party then must come forward with substantial evidence raising a genuine issue of material fact essential to one or more elements of the case. *Smith*, ¶ 10.

## DISCUSSION

¶15 ***Issue 1. Did the District Court err in granting summary judgment to the City on its complaint seeking to enjoin construction of the house based on violations of the development and site zoning permits?***

¶16 The City moved for summary judgment asserting that it had presented evidence sufficient to establish that Olsen's house, as constructed by his agent Mason, violated the requirements of the building permits regarding general structure, setback distances, height, and window size and placement. Defendants argued in response that their evidence established that the house construction conformed to the requirements of the permits and the City's ordinances or, at the least, there were genuine issues of material fact regarding whether the permits and ordinances were violated, which precluded summary judgment. The District Court determined that there were no genuine issues of material fact related to Defendants' violation of the permits in the manner alleged by the City and that the City was entitled to judgment as a matter of law on its complaint.

¶17 We observe at the outset that the parties agree that the development and site zoning permits, including the two drawings of the exterior of the house and the plot-plan drawing, control as to the location, size, and configuration of the house to be built. In other words, to the extent that any requirement in the permits and accompanying documents is at variance with the provisions of Ordinance 503 or other City ordinances, the provisions of the permits control.

8

¶18    We first address the City's claim that the general structure of the house as constructed by Mason violates the permits. As part of its evidence in support of its summary judgment motion, the City provided the District Court copies of the permits with their accompanying documents and the Bowman survey. As stated above, Mason provided two drawings illustrating front and rear exterior views of the proposed house. The front view (to the south, facing Warren Street) shows the first and second floors. The drawing clearly depicts the first floor extending approximately 6 feet further forward than the second floor and covered with a shed roof. The plot-plan drawing incorporated into the permit requirements indicates the footprint of the proposed house to be 40 feet long by 30 feet wide. Thus, according to these drawings, the first floor of the house was to cover the full footprint of 40 feet by 30 feet, while the second floor would cover an area of 40 feet by approximately 24 feet.

¶19    The Bowman survey, conducted after the first and second floors had been framed in, indicated that the footprint of the house as constructed corresponded with the 40 by 30 foot footprint required by the permits. But the second floor, as shown in photographs of the house under construction, was also built to the full 40 by 30 foot dimensions, rather than being set in 6 feet. Thus, the front façade of the house is flat from the bottom of the first floor to the top of the second floor, with no shed roof extension.

¶20    The District Court set forth these facts as being essentially undisputed. The court thus determined there were no genuine issues of material fact that the house as constructed violated the permit requirements regarding the design and structure of the front façade. On appeal, Defendants present no argument and point to no evidence which

would raise a genuine issue of material fact regarding whether the south-facing side of the house was constructed in conformance with the permits, thus tacitly admitting that no genuine issue of material fact exists in this regard. We conclude, therefore, that the District Court did not err in determining that the general structure of the house as built violated the permit requirements.

¶21 With regard to the setback issue, the District Court noted that the plot-plan drawing incorporated into the permits indicated that the house was to be located 25 feet from the lot line to the south along Warren Street and 35 feet from the lot line to the east along Fairweather Street. The Bowman survey established that the house as constructed is actually located approximately 7 feet from the south lot line and approximately 22 feet from the east lot line. Thus, the District Court concluded Defendants had violated the permits in regard to the setbacks.

¶22 On appeal, Defendants assert that the District Court erred in determining that they violated the setback requirements. They rely heavily on City ordinances regulating setbacks in various areas of the City. Pursuant to Title 11 of the City Code, which is incorporated by reference into Ordinance 503, the minimum front-yard setback requirement for the district in which Olsen's property is located is "50 feet from the center of the abutting public street or road." Defendants argue that the location of Olsen's house on his property meets the setback requirements on Warren Street as set forth in the City ordinance or that a genuine issue of material fact exists on this issue because the ordinance fails to specify whether the 50 foot setback is to be measured from

the public street as indicated on the official City plat or the actual traveled way currently in use by the public.

¶23    As noted above, however, the parties agree that the development and site zoning permits control as to the location, size, and configuration of the house, so that where any variance exists between the provisions of Ordinance 503 or other City ordinances and the requirements of the permits, the permits control. Here, the permits and accompanying documents required setbacks of 25 feet from the lot line along Warren Street and 35 feet from the lot line along Fairweather Street, rather than the setback of 50 feet specified in Title 11 of the City Code. The Bowman survey clearly establishes that the setbacks required by the permits were not met. We conclude, therefore, that the District Court did not err in determining there were no genuine issues of material fact that Defendants violated the setback requirements of the permits.

¶24    Defendants also argue that the District Court erred in concluding there were no genuine issues of material fact related to the overall height of the Olsen's house, as well as the size and appearance of the windows. We determined above that the City established the absence of genuine issues of material fact and entitlement to judgment as a matter of law on their claims that Defendants violated the development and site zoning permit requirements relating to the general structure of the house and the setbacks from Warren and Fairweather Streets. The City having sufficiently established those two violations of the permits, we conclude that it is not necessary to address whether other violations of the permits occurred.

¶25 We hold that the District Court did not err in granting summary judgment to the City on its complaint seeking to enjoin construction of the house based on violations of the development and site zoning permits.

¶26 ***Issue 2. Did the District Court err in granting the City permanent injunctive relief in the form of ordering Olsen and Mason to remove the house from the property?***

¶27 The District Court granted summary judgment to the City on its complaint on the basis that Defendants had violated the terms of the development and site zoning permits in constructing Olsen's house. The court further determined that monetary damages were insufficient to remedy Defendants' permit violations and that a permanent injunction precluding further construction of the house was appropriate under § 27-19-102(1), MCA. The court also ordered Defendants to remove the portions of the house already constructed and return the property to its former appearance. Defendants contend the District Court erred in granting the permanent injunction and ordering removal of the house because they presented evidence establishing that the house could be completed in its current location without injury to the historical character of the City.

¶28 Defendants point out that their expert witness, Steve Adler, a historical architect, testified in his deposition that the house could be completed in a manner that would be historically appropriate and not compromise the City's historical integrity. They suggest that design elements such as siding, door, and window configuration, as well as landscaping could be completed in a manner that complies visually with the City's concept of proper historical design. Defendants also suggested in the District Court that an addition with a shed roof could be added to the first floor on the south-facing side of

the house to provide a visual break in the façade and conform to the drawings included with the permits.

¶29 Defendants' arguments, however, ignore the fact that the suggested exterior design elements would not correct the permit violations regarding setbacks and the overall structure of the house. Indeed, Defendants' suggestion of appending a shed roof addition to the first floor would only exacerbate the existing violations by reducing the distance between the outer edge of the house and the lot line bordering Warren Street to approximately 1 foot and increasing the footprint of the house beyond the 30 by 40 foot dimensions approved in the permits.

¶30 Defendants contend that the City should have granted them a variance excusing the building violations, rather than seeking an injunction, or that the District Court should have held a hearing to determine whether the City should grant Defendants such a variance. However, as the City points out, Defendants never requested that the City grant a variance or otherwise amend the permits to conform to the building Mason actually constructed, and Defendants provide no authority for the concept that the City was obligated to consider a variance on its own initiative. Nor did Defendants ever request that the District Court consider or rule upon whether the City should be required to grant them such a variance.

¶31 A district court's grant of a permanent injunction will not be reversed absent a showing of manifest abuse of discretion. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12. "A 'manifest' abuse of discretion is one that is obvious, evident or unmistakable." *Shammel*, ¶ 10. We conclude that

13

Defendants have failed to establish that the District Court manifestly abused its discretion in this instance. We hold, therefore, that the District Court did not err in granting the City permanent injunctive relief in the form of ordering Olsen and Mason to remove the house from the property.

¶32 ***Issue 3. Did the District Court err in granting summary judgment to the City on Defendants' counterclaims?***

¶33 In their answer to the City's complaint, Defendants raised counterclaims asserting that Ordinance 503 was unconstitutionally vague and could not be enforced against them and that the City and its officials arbitrarily and discriminatorily enforced Ordinance 503 in a manner that violated Defendants' constitutional rights to due process and equal protection. In its order granting the City summary judgment, the District Court dismissed Defendants' counterclaims, essentially determining them to be moot.

¶34 Defendants first argue that the District Court's dismissal of their counterclaims pursuant to summary judgment violated their constitutional right to due process. They assert that they continuously requested trial by jury on their counterclaims and, therefore, the counterclaims were not subject to the cross-motions for summary judgment.

¶35 Yet, in their brief responding to the City's motion for summary judgment, Defendants requested the District Court determine, as a matter of law, that the City's ordinances are vague and ambiguous and that the City's enforcement of those ordinances against Defendants was selective and arbitrary. Defendants further requested that the court deny the City's request for an injunction, grant summary judgment to Defendants, and allow the matter to proceed on the sole issue of the amount of damages suffered by

14

Defendants. Furthermore, during their oral argument before the District Court, counsel for Defendants expressly requested that the court grant summary judgment to Defendants on the ground that the ordinances are vague and ambiguous. Thus, Defendants themselves clearly presented their counterclaims as ripe for determination at the summary judgment stage and cannot now complain that the District Court erred in addressing the counterclaims in its summary judgment order.

¶36 Defendants also argue that the District Court erred in granting the City summary judgment on their counterclaims because they presented evidence—primarily in the form of an affidavit from Donahue (the City's Historic Preservation Officer)—entitling them to judgment as a matter of law. In moving for summary judgment, Defendants argued first that the construction of the house did not violate the ordinances or permits and, in the alternative, that even if the construction technically violated the ordinances, the ordinances should not be enforced against them in this case because the ordinances are unconstitutionally vague and the City arbitrarily enforced them.

¶37 We held above that the District Court did not err in granting summary judgment to the City on the ground that the construction of Olsen's house violated requirements of the development and site zoning permits relating to the general structure of the house and the setbacks. In other words, the City is entitled to summary judgment based on violations of the permits, not violations of any City ordinances. Defendants' counterclaims and arguments relating to the validity and enforceability of the ordinances have no bearing on whether the City may enforce the terms of the permits. Accordingly, having determined that Defendants violated the terms of the permits, rather than the ordinances, the District

15

Court correctly concluded that Defendants' counterclaims essentially were moot. We hold, therefore, that the District Court did not err in granting summary judgment to the City on Defendants' counterclaims.

**CONCLUSION**

¶38 We affirm the District Court's order granting summary judgment to the City on its complaint and on Defendants' counterclaims, permanently enjoining Defendants from further construction on the house, and ordering Defendants to remove the structure and re-contour the property.

¶39 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS