CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Amber Armitage appeals from an order of the Fourth Judicial District Court, Missoula County, affirming a Municipal Court decision denying her motion to suppress the results of a breath alcohol test. We affirm.
¶2 We restate the following issues for review:
¶3 Issue One: Whether the City of Missoula has authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath test.
¶4 Issue Two: Whether conducting a post-arrest breath test with Armitage’s consent was an unreasonable search and seizure.
¶5 Issue Three: Whether Missoula ordinances criminalizing the refusal to submit to a breath test unconstitutionally impair the freedom, of speech.
PROCEDURAL AND FACTUAL BACKGROUND
¶6 At approximately 10:00 p.m. on November 24, 2012, Missoula Police Officer Nathan Mattix responded to a 911 call reporting a possibly impaired driver. The caller reported she was following a vehicle that was traveling below the speed limit, not maintaining a constant speed, and drifting into other lanes of traffic. The caller gave a description of the vehicle and its license plate number. Officer Mattix identified the vehicle while it was stopped at a red light. Upon accelerating, the vehicle drifted to the right and its tires crossed the white line on the right side of the road. Officer Mattix also learned from the 911 dispatcher that the vehicle’s registration was expired. Officer Mattix decided to conduct an investigative stop.
¶7 The driver of the vehicle was Amber Armitage. Officer Mattix read Armitage a preliminary alcohol screening test (PAST) advisory, which informed her that by operating a vehicle on public roads, she had given her implied consent to a preliminary breath test. He also notified her of her right to refuse that test. He informed her that pursuant to state *450 law, her license could be suspended for up to one year for refusing the test. He also informed her that pursuant to Missoula city ordinances, she could be charged with a misdemeanor and fined $500 for refusing the test. Armitage refused the test. Officer Mattix did not seize Armitage’s license. Armitage was not fined for refusing the test.
¶8 Officer Mattix placed Armitage under arrest and transported her to the police station for'booking. Officer Mattix read Armitage a “full” implied consent warning, again notifying her that under Missoula city ordinances, refusal to submit to a breath test is a misdemeanor offense punishable by a $500 fine. Armitage then agreed to provide a breath sample at the police station.[1] The breath test showed that her blood alcohol concentration was 0.134, exceeding the legal limit of 0.08.
¶9 Armitage was charged with negligent endangerment, driving under the influence of alcohol, operating a vehicle with expired registration, failure to carry proof of insurance, and operation of a noncommercial vehicle with a blood alcohol concentration of 0.08 or more. She filed a motion to suppress all evidence obtained as a result of the investigative stop. The Municipal Court denied the motion. Armitage entered a conditional guilty plea to the charge of operating a vehicle with a blood alcohol concentration of 0.08 or more, reserving her right to appeal the Municipal Court’s denial of her motion to suppress. The remaining charges were dismissed.
¶10 Armitage appealed the denial of her motion to suppress to the District Court, claiming Officer Mattix did not have a particularized and objective basis for making the investigative stop and violated §§ 61-8-402 and -409, MCA, by administering a breath test despite her initial refusal. She also claimed the Missoula ordinances imposing a $500 fine for refusing to give a breath sample were invalid because they conflicted with state law and violated her constitutional rights. The District Court affirmed the decision of the Municipal Court, holding that the investigative stop was justified by particularized suspicion, the Missoula ordinances were valid, and Armitage freely consented to the breath test administered at the police station. Armitage appeals those portions of the District Court’s order addressing the validity of the Missoula ordinances and the procedures *451 followed in administering the breath test.
STANDARD OF REVIEW
¶11 When reviewing the decision of a municipal court, a district court functions as an intermediate appellate court. City of Bozeman v. Cantu, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. On appeal from the district court, this Court examines the record independently of the district court’s decision, applying the appropriate standard of review. Cantu, ¶ 10. We review constitutional issues and questions of law de novo. City of Missoula v. Girard, 2013 MT 168, ¶ 10, 370 Mont. 443, 303 P.3d 1283.
DISCUSSION
¶12 Issue One: Whether the City of Missoula has authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath test.
¶13 Armitage claims the City of Missoula does not possess the authority to enact ordinances creating a misdemeanor penalty for the refusal to submit to a requested breath or blood test, because state law already addresses the issue. We first address the nature and extent of the City’s authority, and then examine the relevant statutes and ordinances governing the administration of breath and blood alcohol testing.
¶14 In 1997, the City of Missoula adopted a self-government charter. A local government operating under a self-government charter may exercise any power not prohibited by the Montana Constitution, state law, or the charter itself. Mont. Const, art. XI, § 6; § 7-1-101, MCA. The powers of a local government operating under a self-government charter must be liberally construed, with reasonable doubts resolved in favor of the existence of local government power. Section 7-1-106, MCA.
¶15 Local governments were given the option of adopting self-government charters under Article XI, Section 5 of the 1972 Montana Constitution. Prior to the adoption of the 1972 Constitution, the basic assumption was that the source of municipal power was the state. City of Billings v. Herold, 130 Mont. 138, 141-42,. 296 P.2d 263, 264-65 (1956). Municipalities could exercise only those powers expressly granted them by the legislature. D & F Sanitation Serv. v. City of Billings, 219 Mont. 437, 444, 713 P.2d 977, 981 (1986); Tipco Corp. v. City of Billings, 197 Mont. 339, 344, 642 P.2d 1074, 1077 (1982). The state could delegate to municipalities the power to regulate matters of *452 local concern. Herold, 130 Mont. at 142, 296 P.2d at 265. Regarding matters of statewide concern, if the state chose to regulate in a particular field, it was said to have occupied that field to the exclusion of municipalities under the doctrine of implied preemption. D & F Sanitation Serv., 219 Mont, at 444, 713 P.2d at 982. Driving under the influence was deemed an area of statewide concern, and therefore municipalities were without authority to enact ordinances regulating the subject. Herold, 130 Mont. at 154, 296 P.2d at 271.
¶16 The 1972 Constitution changed these basic assumptions about the role of municipalities. D & F Sanitation Serv., 219 Mont. at 445, 713 P.2d at 982. Because local governments with self-government powers are permitted to exercise any power not specifically prohibited, any limitation on their authority must be express, not implied. Am. Cancer Soc’y v. State, 2004 MT 376, ¶ 10, 325 Mont. 70, 103 P.3d 1085. “The doctrine of implied pre-emption, by definition, cannot apply to local governments with self-government powers.” D &F Sanitation Serv., 219 Mont, at 445, 713 P.2d at 982 (citing Tipco Corp., 197 Mont. at 344, 642 P.2d at 1077). Therefore, our opinion in Herold, in which we held that the state had implicitly preempted local regulation of driving under the influence, has no applicability to ordinances enacted by the City of Missoula, which has self-government powers. See D & F Sanitation Serv., 219 Mont. at 445, 713 P.2d at 982; Herold, 130 Mont. at 154, 296 P.2d at 271.
¶17 The authority of a local government with self-government powers can be limited by express prohibitory language. Section 7-1-101, MCA; Am. Cancer Soc’y, ¶ 14; State ex rel. Swart v. Molitor, 190 Mont. 515, 518, 621 P.2d 1100, 1102 (1981). State law prohibits local governments with self-government powers from acting in several specific areas, including public education, professional and occupational licensing, and unemployment and worker’s compensation. Section 7-1-111, MCA. Driving under the influence is not included in this list. See § 7-1-111, MCA. In certain other areas, local governments with self-government powers may act only pursuant to a specific delegation of authority. Section 7-1-112, MCA. These areas include taxation and gambling. Section 7-1-112, MCA. Driving under the influence is not included. See § 7-1-112, MCA.
¶18 In areas affirmatively subjected to state regulation or control, local governments with self-government powers are expressly prohibited from exercising any power that is inconsistent with state law or administrative regulation. Section 7-1-113(1), MCA. The exercise of power is inconsistent with state law or regulation if it *453 establishes standards or requirements that are lower or less stringent than the state enactments. Section 7-1-113(2), MCA. Further, local authorities are prohibited from enacting or enforcing any ordinance in conflict with state law governing traffic regulation. Section 61-8-103, MCA. Local authorities, however, may adopt additional traffic regulations which are not in conflict with state traffic regulations. Section 61-8-103, MCA.
¶19 State law provides for two separate tests to be given to persons suspected of driving under the influence: one before arrest, and one after. Sections 61-8-402, -409, MCA; Nichols v. Dept. of Justice, 2011 MT 33, ¶¶ 10-11, 359 Mont. 251, 248 P.3d 813; Smith v. Driver’s Improvement Bureau, 1998 MT 94, ¶ 14, 288 Mont. 383, 958 P.2d 677. A prehminary alcohol screening of a person’s breath may be administered during an investigative stop, based upon a particularized suspicion, for the purpose of estimating the person’s alcohol concentration. Section 61-8-409(1), MCA. If the PAST is refused, the person’s driver’s license may be administratively suspended for up to one year. Section 61-8-409(3), MCA. Once refused, a PAST may not be administered except under circumstances allowing the officer to apply for a warrant. Section 61-8-409(4),MCA.
¶20 If a person suspected of driving under the influence is arrested, a breath or blood test may be given, based upon probable cause, for the purpose of determining the presence of alcohol or drugs in the person’s body. Section 61-8-402(1), (2), MCA. Submitting to a PAST does not satisfy the obligation to submit to post-arrest breath or blood testing. Section 61-8-409(2), MCA. If the arrested person refuses to submit to post-arrest breath or blood testing, the test may not be given except pursuant to a warrant. Section 61-8-402(4), (5), MCA; see also State v. Minett, 2014 MT 225, ¶ 12,376 Mont. 260,332 P.3d 235. The person’s driver’s license may be suspended for up to six months for a first refusal of a test and up to one year for a second refusal. Section 61-8-402(7), MCA.
¶21 Missoula’s ordinances governing breath and blood alcohol testing of persons suspected of driving under the influence read as follows:
10.56.020 Unlawful to refuse to submit to a breath or blood alcohol and/or drug test. It is unlawful and constitutes a misdemeanor offense for any person operating or in actual physical control of a motor vehicle suspected of doing so under the influence of alcohol and/or drugs to refuse to submit to one or more breath or blood alcohol and/or drug tests to detect alcohol and/or drugs requested and designated by any peace officer as *454 defined by Montana State law. Prior to charging a person with a violation of this section a peace officer must inform the person requested to take the designated test that refusing the breath or blood alcohol and/or drug test is a misdemeanor offense under Missoula Municipal Code and identify the penalties associated with the offense. If any arrested person refuses to submit to one or more breath or blood alcohol and/or drug test requested and designated by a peace officer as provided for pursuant to Montana state law, the refused test may not be given. However, the person refusing to submit to any such requested breath or blood alcohol and/or drug test may be charged with a misdemeanor offense pursuant to this section.
10.56.030 Penalties. The penalties for a violation of this chapter are established pursuant to this section. Incarceration is not a penalty for a violation of this chapter. A person convicted under this chapter shall be subject to a fine of $500.00, no portion of which may be suspended, waived or deferred by the court.
¶22 Missoula’s ordinances imposing a $500 misdemeanor fine for refusing breath or blood testing are not less stringent than state law allowing administrative suspension of an individual’s driver’s license, and therefore are not inconsistent as defined by § 7-1-113(2), MCA. An individual who refuses breath or blood testing may be subject to both a $500 fine under city ordinances and a suspension of driving privileges under state law. The Missoula ordinances are additional regulations and pose no conflict with state law as contemplated by § 61-8-103, MCA. We hold the ordinances are valid.
¶23 Issue Two: Whether conducting a breath test with Armitage’s consent after her arrest was an unreasonable search and seizure.
¶24 Armitage claims that because she refused to provide a breath sample during the investigative stop, she could not be asked to provide a sample again after her arrest. She cites § 61-8-409(4), MCA, which states that if a PAST is refused, it may not be given, and § 61-8-402(4), MCA, which states that if a post-arrest breath or blood alcohol test has been refused, it may not be given.
¶25 As discussed above, two distinct tests may be administered to a person suspected of driving under the influence of alcohol. Sections 61-8-402, -409, MCA; Nichols, ¶¶ 10-11; Smith, ¶ 14. Submitting to a PAST does not satisfy the obligation to submit to post-arrest breath or blood testing. Section 61-8-409(2), MCA. The refusal to submit to a PAST is independent of the refusal to submit to post-arrest breath or blood testing, with the excep tion that an individual’s license may not *455 be suspended more than once for multiple refusals arising from the same incident. Section 61-8-409(6), MCA.
¶26 Arinitage refused a PAST under § 61-8-409(3), MCA. She was then placed under arrest and asked to submit to post-arrest breath or blood testing at the police station pursuant to § 61-8-402, MCA. Her refusal of the PAST did not constitute a refusal of post-arrest testing. Armitage consented to post-arrest testing and willingly provided two breath samples. Officer Mattix did not violate statutory procedures by administering a post-arrest breath test with Armitage’s consent.
¶27 Issue Three: Whether Missoula ordinances criminalizing the refusal to submit to a breath test unconstitutionally impair the freedom of speech.
¶28 Armitage claims the Missoula ordinances imposing a $500 fine for refusing to submit to breath or blood testing unconstitutionally interfere with her right to say, “I refuse.” The ordinances proscribe conduct, not speech. A person who verbally informs the officer that he or she does not agree with the ordinances, but nevertheless submits to testing, may not be penalized. Conversely, an individual who does not say a word, but physically refuses to provide a sample, may be penalized. See Johnson v. Div. of Motor Veh., 219 Mont. 310,314, 711 P.2d 815, 817 (1985) (“[Respondent’s conduct constituted an implied refusal to take the breath test.”). It is the act of refusing, not the speech accompanying that act, that triggers the misdemeanor penalty. ¶29 Moreover, Armitage was never charged under the ordinances in question, nor is there any evidence that the ordinances had a “chilling effect” on her speech during her interactions with Officer Mattix. Armitage was not penalized for refusing testing during the investigative stop. She later consented to testing at the police station, during what the District Court accurately observed to be a “chatty and overtly friendly exchange.” Armitage’s freedom of speech was in no way inhibited.
¶30 Affirmed.
JUSTICES WHEAT, BAKER and COTTER concur.

 The Special Concurrence suggests that because Armitage consented to administration of the test after she was arrested, our Opinion “constitutes an improper advisory opinion.” However, Armitage did refuse the PAST, thus is subject to prosecution under the ordinance, and is therefore in a position to properly place this matter before the courts for consideration.