FILED

07/01/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0542

DA 24-0542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 137

UPPER MISSOURI WATERKEEPER,
TANYA & TOBY DUNDAS,
SALLY & BRADLEY DUNDAS,
CAROLE & CHARLES PLYMALE, and
CODY MCDANIEL,

   Plaintiffs and Appellants,

  v.

BROADWATER COUNTY and the
MONTANA DEPARTMENT OF
NATURAL RESOURCES AND
CONSERVATION,

   Defendants and Appellees,

  and

71 RANCH, LP,

   Intervenor and Appellee.

APPEAL FROM: District Court of the First Judicial District,
      In and For the County of Broadwater, Cause No. DV-2022-38
      Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

     Guy Alsentzer, Upper Missouri Waterkeeper, Bozeman, Montana

     David K. W. Wilson, Jr., Robert Farris-Olsen, Morrison Sherwood
     Wilson Deola, PLLP, Helena, Montana

     Graham J. Coppes, Ferguson & Coppes, PLLC, Missoula, Montana

For Appellee Broadwater County:

    Susan B. Swimley, Swimley Law, Bozeman, Montana

    Tara DePuy, Attorney at Law, Livingston, Montana

For Appellee DNRC:

    Brian C. Bramblett, Molly Kelly, Montana Department of Natural Resources and Conservation, Helena, Montana

For Intervenor and Appellee 71 Ranch, LP:

    Vuko J. Voyich, Anderson and Voyich, P.L.L.C., Livingston, Montana

Submitted on Briefs:  April 9, 2025

Decided:  July 1, 2025

Filed:

_____
Clerk

2

Justice Beth Baker delivered the Opinion of the Court.

¶1 Upper Missouri Waterkeeper and seven Broadwater County residents appeal the First Judicial District Court's denial of their attorney fees request after the court entered declaratory judgment that 71 Ranch's proposed subdivision did not meet the "exempt well" exception for a water rights permit and that Broadwater County wrongly granted preliminary approval of the subdivision. The Plaintiffs sought fees on three alternative bases: the Montana Water Use Act, § 85-2-125, MCA; the Uniform Declaratory Judgments Act, § 27-8-313, MCA; and the Private Attorney General Doctrine. The District Court denied fees under all three claims.

¶2 We agree with the District Court that the Water Use Act does not authorize fees in this case. But, on the basis of the court's findings, we reverse its denial of fees as supplemental relief for the declaratory judgment. We remand for the District Court to determine a reasonable amount of fees and their apportionment. We do not reach the private attorney general claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 71 Ranch submitted a preliminary plat application to Broadwater County, proposing to subdivide 442 acres on the east side of Canyon Ferry Reservoir, called the "Horse Creek Hills Subdivision." It proposed four phases of development, which would subdivide the land into thirty-nine residential lots, two commercial lots, and one open space lot; each phase of the development would be serviced by its own exempt well, septic, and stormwater system. With the application for each phase, 71 Ranch submitted a letter from the Department of Natural Resources and Conservation (DNRC)—called a

3

"predetermination letter"—estimating the phase's water usage and concluding that "the proposed appropriation does fit the current rules and laws pertaining to the filing of an exempt water right." After several remands to the Broadwater County Planning Board, the Broadwater County Commission approved the preliminary plat application.

¶4 Upper Missouri Waterkeeper, a nonprofit organization, and seven county residents, including senior water rights holders (collectively "Upper Missouri"), filed a complaint against Broadwater County and DNRC in August 2022, alleging that Broadwater County violated §§ 76-3-603 and -608, MCA, of the Montana Subdivision and Platting Act (Counts I and II); requesting a declaration that DNRC erroneously interpreted the Montana Water Use Act's exempt well provision and accompanying administrative rule in violation of the Montana Constitution (Count III); and requesting a declaration that Broadwater County's reliance on DNRC's interpretation was arbitrary and capricious (Count IV). 71 Ranch sought and was granted leave to intervene.

¶5 Upper Missouri and the County filed cross-motions for summary judgment. The District Court ruled that, in violation of the Subdivision and Platting Act, the Subdivision's environmental assessment inadequately addressed potential impacts to surface and groundwater and that the administrative record was "insufficiently clear, organized, and cohesive" to provide citizens with a "reasonable opportunity for . . . participation in the operation of the agencies." The record showed that "the County ben[t] over backward to allow 71 Ranch repeated opportunities to rectify admitted and obvious basic errors in the application." The approval process generated "thousands of documents and over thirty hours of meeting recordings," which had been dissected by ten attorneys involved in this

4

litigation. The District Court found that, despite all this time and effort, 71 Ranch still submitted a deficient application, and the County abused its discretion in approving the Subdivision in violation of the Subdivision and Platting Act.

¶6 The court found that, in issuing the four predetermination letters, DNRC determined that "the project was entitled to a combined exempt well appropriation for *each* phase of the project." DNRC's decision, the court found, "blatantly ignore[d]" this Court's holding in *Clark Fork Coal. v. Tubbs*, 2016 MT 229, ¶¶ 23-24, 384 Mont. 503, 380 P.3d 771, when it disregarded the project's total "combined appropriation" by treating each of the Subdivision's four phases as a separate project. The court found "no basis in law for DNRC to treat the four phases of 71 Ranch's subdivision project separately, a conclusion which is absolutely clear from statute, administrative rule, Montana Supreme Court precedent, and even DNRC's letters in this matter."

¶7 The District Court granted Upper Missouri summary judgment on all but its constitutional claim against DNRC. The parties then stipulated to dismiss that claim with prejudice. Upper Missouri filed a motion for attorney fees under the Water Use Act, the Uniform Declaratory Judgments Act (UDJA), and the private attorney general doctrine. Upper Missouri appeals the District Court's denial of its fees motion. Neither the Defendants nor the Intervenor appealed the District Court's judgment on the merits.

**STANDARD OF REVIEW**

¶8 "We review de novo whether there is legal authority to award attorney fees." *Town of Kevin v. N. Cent. Mont. Reg'l Water Auth.*, 2024 MT 159, ¶ 6, 417 Mont. 325, 553 P.3d 392 (citation omitted). "If legal authority exists, we review a district court's grant or denial

5

of attorney fees for an abuse of discretion." *Town of Kevin*, ¶ 6 (citation omitted). A trial court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice. *TCF Enters., Inc. v. Rames, Inc.*, 2024 MT 38, ¶ 15, 415 Mont. 306, 544 P.3d 206 (citation omitted).

**DISCUSSION**

¶9 "Montana follows the 'American Rule,' which provides that, absent statutory or contractual authority, attorney fees will not be awarded to the prevailing party in a lawsuit." *City of Helena v. Svee*, 2014 MT 311, ¶ 18, 377 Mont. 158, 339 P.3d 32 (citation omitted). Upper Missouri asserts two statutory bases for an award of fees and a third basis (the private attorney general doctrine) under what we have recognized as one of the "equitable exceptions" to the general rule. *Trs. of Ind. Univ. v. Buxbaum*, 2003 MT 97, ¶ 19, 315 Mont. 210, 69 P.3d 663.

¶10 *1. Is Upper Missouri entitled to attorney fees under § 85-2-125, MCA, of the Water Use Act?*

¶11 Upper Missouri argues that it is entitled to attorney fees under § 85-2-125(1), MCA, of the Water Use Act, which provides that

> [i]f a final decision of the department on an application for a permit or a change in appropriation right is appealed to the district court, the district court may award the prevailing party reasonable costs and attorney fees.

The Act defines "permit" as "the permit to appropriate issued by the department under [§§] 85-2-301 through 85-2-303 and 85-2-306 through 85-2-314." Section 85-2-102(20), MCA. Section 85-2-306, MCA, contains exceptions to permit requirements, including the exempt well provisions invoked by 71 Ranch.

6

¶12 Quoting the predetermination letters, the District Court reasoned that the letters were "not part of DNRC's water rights adjudication process but rather . . . a distinct final DNRC decision as part of 'the proposed DEQ review in accordance with'" Admin. R. M. 17.36.103(1)(s) (2019). The predetermination letters were part of the subdivision review process, the court found, not of DNRC's water rights permitting process. Because DNRC's water rights adjudication had not even begun and the court did not issue injunctive relief, the court ruled that Upper Missouri was not entitled to attorney fees under § 85-2-125, MCA.

¶13 Upper Missouri argues that DNRC's predetermination letters constituted a "final decision" under § 85-2-125(1), MCA, because they "authorized the subdivision to move forward and advised the applicant that pumping could lawfully begin." DNRC responds that finality of its decision is not determinative here—instead the question is "whether there [was] even a proceeding that qualifies to invoke" § 85-2-125, MCA. DNRC maintains that § 85-2-125(1), MCA, applies to applications for new permits and change authorizations, not the exempt water uses outlined in § 85-2-306, MCA, that formed the basis of the predetermination letters. The statutes that cover applications for new permits, change authorizations, and the administrative hearings process, DNRC notes, were not implicated here.

¶14 DNRC points to Upper Missouri's summary judgment briefing, in which it argued that the agency circumvented the permitting process by evaluating the Subdivision project in phases. DNRC contends that this indicates Upper Missouri previously recognized the distinction between the permitting process—which could support a claim for attorney fees

7

under § 85-2-306, MCA—and the predetermination letters, which "only evaluated the amount of water proposed . . . for purposes of the Subdivision and Platting Act."

¶15 Upper Missouri's argument—that the predetermination letters effectively authorized the Subdivision to move forward—is not the operative inquiry to determine whether a party is entitled to attorney fees under § 85-2-125(1), MCA. The statute authorizes fees in cases involving the agency's decision on "an application for a permit or a change in appropriation right." Section 85-2-125(1), MCA. Upper Missouri does not contend that DNRC made a final decision on either an application for a new permit or a change in an existing appropriation right. As Upper Missouri acknowledged in briefing to the District Court, DNRC's predetermination letters would have allowed the development to *avoid* the permitting process.

¶16 The predetermination letters demonstrate that DNRC issued them as part of the subdivision review process. Each letter states that its "purpose . . . is to respond to your request for DNRC review of water right permit exceptions under MCA 85-2-306(3)(a)(iii) for the proposed DEQ review in accordance with" Admin. R. M. 17.36.103(1)(s) (2019). The rule provided that an applicant must submit the predetermination letters "to the reviewing authority as part of a subdivision application." Admin. R. M. 17.36.103(1) (2019). Because the predetermination letters were not a final decision on an application for a permit or a change in appropriation right, Upper Missouri is not entitled to attorney fees under § 85-2-125(1), MCA. The District Court therefore did not err when it denied Upper Missouri's request for attorney fees under the Water Use Act.

8

¶17    2.  *Is Upper Missouri entitled to attorney fees under § 27-8-313, MCA, of the Uniform Declaratory Judgments Act?*

¶18    In *Buxbaum*, ¶ 42, we recognized § 27-8-313, MCA, as statutory authority for an award of attorney fees.  That section provides: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."  Section 27-8-313, MCA.  This Court reasoned that Montana's UDJA did not narrow "the broad, discretionary authority conferred by § 27-8-313, MCA." *Buxbaum*, ¶ 41.  To the contrary, we looked to § 27-8-102, MCA, which provides that the UDJA's purpose is remedial and that "it is to be liberally construed and administered." *Buxbaum*, ¶ 41.  Based on the UDJA's liberal construction and the absence of a provision narrowing courts' discretionary authority, we concluded that "§ 27-8-313, MCA, authorizes a court to award attorney fees when the court, in its discretion, deems such an award 'necessary or proper.'" *Buxbaum*, ¶ 42.

¶19    "The threshold question for an award of attorney fees under the UDJA is whether equities support an award." *Town of Kevin*, ¶ 16 (citation omitted).  One equitable consideration is whether the parties are similarly situated. *Svee*, ¶ 20.  The District Court considered whether Upper Missouri was similarly situated to DNRC, Broadwater County, and 71 Ranch.  The court cited *Svee*, ¶ 21, where we reasoned that the two homeowners were not similarly situated to the municipal government of Helena because they had significantly fewer litigation resources.  Comparing Upper Missouri's litigation resources to the homeowners' resources in *Svee*, the court found that Upper Missouri "certainly ha[s] even fewer resources in comparison to the combined power of a state agency, county

9

government, and an alleged powerful local landowner." The court ruled: "Equitable considerations weigh[] heavily towards an award of fees under the UDJA."

¶20 Quoting Upper Missouri's description of 71 Ranch, the District Court characterized the ranch as a "litigant with both a history in Montana courtrooms, the chambers of the legislature, and in the halls of state agencies." 71 Ranch—the only Defendant to dispute the District Court's equities finding—argues that these allegations are unsupported by the record and the court improperly relied on them in considering the equities. Upper Missouri responds that it is a standalone 501(c)(3) organization that, as a member of the Waterkeeper Alliance, receives no litigation support. 71 Ranch points to no evidence in the record indicating that Upper Missouri has comparable litigation resources to match those of the combined Defendants. Even without 71 Ranch, however, the record supports the District Court's conclusion that seven local residents and a nonprofit organization lack the resources to be similarly situated to a state agency and a county government. *See Svee*, ¶ 21. The District Court did not abuse its discretion in finding that the equities support an award of attorney fees under the UDJA.

¶21 In *Buxbaum*, ¶ 45, we quoted *McConnell v. Hunt Sports Ent.*, 725 N.E.2d 1193 (Ohio App. 10th Dist. 1999), an Ohio Court of Appeals case that offered clarifying guidance for when attorney fees are "necessary or proper" under the UDJA. In *McConnell*, the Ohio Court of Appeals relied on two cases—one regarding insurance, the other a mortgage—in which the plaintiffs each sought declaratory relief. *Buxbaum*, ¶ 45 (quoting McConnell, 725 N.E.2d at 1225). Attorney fees were necessary or proper in those cases, the Court of Appeals held, because (1) "the insurance company and the mortgagee

10

essentially 'possessed' what the insureds and plaintiffs sought in the litigation"; (2) "the insureds and plaintiffs in . . . [those cases] needed a declaration that they were entitled to such 'property'"; and (3) "the declarations sought in those cases were necessary in order to change the status quo." *Buxbaum*, ¶ 45 (quoting *McConnell*, 725 N.E.2d at 1225). We cautioned that we did "not intend for . . . [the *McConnell*] examples to constitute exhaustive factual scenarios" constraining when a plaintiff may obtain attorney fees under the UDJA. *Buxbaum*, ¶ 45. These "tangible parameters" did not "define the exclusive circumstances justifying an award," nor did their rationale apply exclusively to insurance cases. *Buxbaum*, ¶¶ 42-43. Instead, the tangible parameters simply constituted "guidance in future applications of § 27-8-313, MCA." *Buxbaum*, ¶ 45; *see also Town of Kevin*, ¶ 16 (citations omitted) ("We adopted this analytical framework not to define the exclusive circumstances justifying an award of attorney fees as necessary or proper, but to articulate some tangible parameters for district courts to consider when awarding fees in declaratory judgments.").

¶22    We have distilled the tangible parameters test, such that it now "often considers whether (1) the defendant possesses what the plaintiff sought in the declaratory relief action; (2) it is necessary to seek a declaration showing the plaintiffs are entitled to the relief sought; and (3) the declaratory relief sought was necessary to change the status quo." *Town of Kevin*, ¶ 16 (citations omitted).

¶23    The District Court considered each of the three tangible parameters. The court found that it was necessary for Upper Missouri to seek declaratory relief, comparing the necessity of Upper Missouri's suit to the plaintiffs' declaratory judgment action in *Svee*.

11

The court pointed out that the Svees could have raised their declaratory judgment action in defense to the City of Helena's civil and criminal enforcement actions against them but that this Court held nonetheless that their declaratory judgment action was necessary within the guidelines of the tangible parameters test. *Svee*, ¶ 25. The District Court found that unlike *Svee*, Upper Missouri "could not wait for . . . [its] claims to be resolved in some other manner," and had Upper Missouri not sought declaratory relief, the preliminary plat approval would stand.

¶24 Broadwater County and 71 Ranch do not dispute this finding. DNRC argues that the court's necessity determination does not implicate the agency because the necessity of the action was predicated on the County's decision under the Subdivision and Platting Act. But this overlooks that DNRC's predetermination letters set into motion Broadwater County's approval process. Upper Missouri had no recourse besides filing its declaratory judgment action to obtain the relief it sought. The District Court reasoned that without Upper Missouri's declaratory judgment action, DNRC would have continued to misapply the term "combined appropriation" from § 85-2-306(3)(a)(iii), MCA, and the Subdivision's preliminary plat approval would remain unaffected. We find no error in the court's conclusion on this factor.

¶25 Under the third tangible parameters factor, the District Court ruled that without Upper Missouri's requested declaratory relief, DNRC's "final determination within the subdivision preliminary platting process" would remain unchanged. It thus concluded that declaratory relief was necessary to change the status quo. DNRC contends that the District Court's declaratory relief did not alter the status quo because the predetermination letters

12

neither authorized water use nor prevented the Subdivision from obtaining a water right or using an exempt well in the future. Quoting from DNRC's brief, Upper Missouri responds that the status quo did change because "[t]he subdivision can potentially still obtain an 'exempt well' for 10 acre-feet, but *it must be within the combined appropriation definition and parameters as directed by the District Court.*" Upper Missouri asserts that DNRC thereby acknowledged the court's order changed the status quo for the project.

¶26 The court's order, Upper Missouri argues, also changed the status quo statewide. Upper Missouri points to a DNRC webpage that explains changes to DNRC and DEQ processes following the District Court's summary judgment order in this case. DNRC, *Exempt Well Updates: Subdivision Review Process and Combined Appropriation Guidance*, Mont. Dep't of Nat. Res. & Conservation (accessed Jun. 10, 2025), https://perma.cc/CBV4-LJAS. After the court's order, "DEQ and DNRC terminated the Memorandum of Understanding between the two agencies that formally set forth the predetermination process for water rights"; DEQ began amending its rules "to no longer require a predetermination letter for subdivision approval"; and DNRC rescinded its previous combined appropriation guidance. DNRC, *Exempt Well Updates*. DEQ since has amended its rules, eliminating the requirement that an applicant submit predetermination letters from DNRC as part of a subdivision application. *Compare* Admin. R. M. 17.36.103(1)(s) (2019), *with* Admin. R. M. 17.36.103 (2024).

¶27 The District Court's order caused DNRC to change what it considered to be the combined appropriation for the Subdivision and to alter its exempt well guidance statewide, and DEQ amended its rules concerning subdivision applications. The court did not abuse

13

its discretion when it concluded that seeking declaratory relief was necessary for Upper Missouri to change the status quo.

¶28 Despite finding every factor in favor of an award, the District Court nonetheless denied fees after concluding that the Defendants did not "possess" anything Upper Missouri wanted. Plaintiffs thus could not recover under the UDJA because they did not meet all factors of the tangible parameters test. The District Court found unclear "if or who 'possesses' anything in an action seeking a declaration that a State agency's interpretation of law is incorrect." For the possession factor to weigh in a plaintiff's favor, the court reasoned, the defendant must have "a clear object which may be possessed[, such as] a hockey team . . . , title to property, and funds to reimburse the insured's loss." Because it found that DNRC, the County, and 71 Ranch did not possess any tangible object that Upper Missouri sought in the declaratory relief action, the court concluded that the possession factor weighed against Upper Missouri.

¶29 Our case law does not require that a defendant possess a tangible object for the tangible parameters to weigh in the plaintiff's favor. In *Svee*, ¶¶ 22-23, the trial court reasoned that the possession factor was inapplicable outside the insurance context and denied plaintiffs their attorney fees. We reversed, holding that the tangible parameters test did not define the exclusive circumstances in which attorney fees are necessary or proper under the UDJA. *Svee*, ¶ 24. We stated that "the [district] court's conclusion that the first prong of the tangible parameters test could not be met because it was inapplicable was incorrect." *Svee*, ¶ 24. Similarly here, despite the equities weighing "heavily" in favor of

14

attorney fees and all other factors pointing to a fees award, the District Court denied Upper Missouri's request because the possession factor could not be met.

¶30    In *Town of Kevin*, ¶¶ 3-4, the Town successfully sought a declaratory judgment under the UDJA that it was not a member of the North Central Regional Water Authority. The District Court awarded the Town its attorney fees.  On appeal, we reasoned that the Authority "had what the Town desired," which was "recognizing the Town [w]as not a member." *Town of Kevin*, ¶ 19.  Although the Town sought something more abstract— recognition that it was not a member of the Authority—the possession factor weighed in the Town's favor.  We upheld the award on the court's finding that attorney fees were necessary and proper.  *Town of Kevin*, ¶ 19.

¶31    We recently upheld an attorney fees award under the UDJA when the trial court did not analyze the tangible parameters test at all.  In *Friends of Lake Five v. Flathead County Commission*, 2024 MT 119, ¶¶ 3-4, 416 Mont. 525, 549 P.3d 1179, Flathead County issued a major land use permit to a landowner whose property could be accessed only through a private road.  Although access to the property relied on multiple easements that prohibited the road's use for commercial purposes, Flathead County approved the landowner's use permit that proposed building several nightly vacation rental structures.  *Friends of Lake Five*, ¶¶ 5-8.  Friends of Lake Five sued, successfully obtaining declaratory relief and a permanent injunction against the development.  *Friends of Lake Five*, ¶ 12.  The trial court found that attorney fees were necessary and proper under the UDJA due to the easements' prohibition against commercial use.  *Friends of Lake Five*, ¶ 38.  We upheld the attorney fees award on appeal even though the trial court did not consider the tangible parameters

15

test. *Friends of Lake Five*, ¶¶ 38-40. *Friends of Lake Five* illustrates that the tangible parameters test is not exclusive and that a trial court may award fees as necessary and proper on other bases.

¶32 The UDJA is not primarily a tool to secure ownership or title to objects but a mechanism to obtain a determination of rights. Section 27-8-202, MCA ("Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."). As we observed in *Buxbaum*, ¶ 43, and since, the "tangible parameters" do not "define the exclusive circumstances justifying an award."

¶33 Based on the District Court's own findings, the court abused its discretion when it denied Upper Missouri's attorney fees request. Upper Missouri was entitled to fees once the court found that the equities weighed heavily in its favor and the non-exclusive tangible parameters test indicated fees were necessary and proper. Accordingly, we reverse the District Court's decision to deny attorney fees under the UDJA. We remand for proceedings to determine a reasonable amount of fees to be awarded. On remand, the District Court may consider argument from the parties to determine whether and how to apportion fees between DNRC, Broadwater County, and 71 Ranch.

¶34 Because we remand for an award of attorney fees under the UDJA, we do not reach the parties' private attorney general doctrine arguments.

16

**CONCLUSION**

¶35 We reverse the District Court's denial of Upper Missouri's attorney fees request. We remand for further proceedings to determine a reasonable amount of fees to be awarded and their correct apportionment.

/S/ BETH BAKER

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ KATHERINE M BIDEGARAY
/S/ LAURIE McKINNON
/S/ JIM RICE

Chief Justice Cory Swanson recused himself and did not participate in this case.

Justice Katherine Bidegaray, concurring.

¶36 I concur fully with the majority's analysis concluding that attorney fees under the Water Use Act's fee provisions (§ 85-2-125, MCA) are inapplicable given the procedural specifics here. The majority correctly clarifies that DNRC's predetermination letters do not constitute formal permit decisions as contemplated by statute, and thus attorney fees under that provision are not warranted.

¶37 I also concur with the majority's decision to award attorney fees under the Uniform Declaratory Judgments Act (UDJA), as articulated clearly in ¶ 33. The majority correctly recognizes that the equities strongly favor awarding fees to Upper Missouri Waterkeeper, who successfully challenged significant governmental errors impacting substantial public interests. The majority's thoughtful application of the liberal and remedial principles

17

underlying the UDJA aligns closely with established Montana precedent and appropriately acknowledges the practical impacts of the County's flawed subdivision approval process and DNRC's consistent misinterpretation of the Montana Water Use Act.

¶38 However, I write separately because the majority declined to reach the Private Attorney General Doctrine (PAGD), and I believe addressing the PAGD remains essential for providing complete guidance for future cases. The majority opinion overlooks an important opportunity to reinforce explicitly the constitutional dimensions of the rights Upper Missouri Waterkeeper vindicated. Specifically, this litigation has clearly implicated fundamental constitutional rights, including the right to a clean and healthful environment under Article IX, Section 1, and the protection of existing water rights guaranteed by Article IX, Section 3. Additionally, the procedural deficiencies inherent in Broadwater County's review process significantly impaired citizens' constitutional rights to know and to participate meaningfully in governmental decisions as guaranteed in Article II, Sections 8 and 9.

¶39 Addressing the PAGD claim would underscore the importance of these rights and the critical role citizens play in checking governmental overreach and ensuring responsible stewardship of Montana's environmental resources. This clarification is not merely academic but provides meaningful guidance to lower courts and litigants about when the PAGD appropriately applies. Explicit acknowledgment of the constitutional rights at stake further solidifies the remedial purpose and reach of this equitable doctrine.

¶40 Additionally, while I concur that fees under the Water Use Act (§ 85-2-125, MCA) are inapplicable given the procedural specifics here, the majority's interpretation could

18

more explicitly acknowledge the pragmatic effects of DNRC's predetermination letters. Although correctly excluded from statutory coverage, these letters effectively function as final agency actions that permit subdivision phases to advance without formal permitting. Recognizing these practical consequences could better inform DNRC's future application of its statutory duties, providing clearer guidance to avoid continued misinterpretation and potential abuses.

¶41 For these reasons, I concur fully with the majority's conclusions regarding fees under the Water Use Act and the UDJA but urge additional consideration of the PAGD and practical implications regarding DNRC's determinations under the Water Use Act.

/S/ KATHERINE M BIDEGARAY

Justice Laurie McKinnon joins in the concurring Opinion of Justice Katherine Bidegaray.

/S/ LAURIE McKINNON